SHANK, Appellee,

v.

SHANK, n.k.a. McKinniss, Appellant.

[Cite as *Shank v. Shank* (1997), 122 Ohio App.3d 189.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–97–29.

Decided Aug. 4, 1997.

*Coulter, Ballinger & Yager* and *Brent W. Yager,* for appellee.

*Wilson & Kochheiser Co., L.P.A.,* and *Robert E. Wilson,* for appellant.

EVANS, Presiding Judge.

Kathy L. Shank, now known as Kathy L. McKinniss, appeals from a judgment of the Court of Common Pleas of Marion County denying her motion for modification of child support. This case was originally assigned to the accelerated docket; however, because of the issues raised herein, we elect to issue the following opinion pursuant to Loc.R. 12(5).

The marriage of Kathy Shank, appellant, and John E. Shank, appellee, was dissolved on November 3, 1994. According to a shared parenting arrangement agreed to by the parties, appellee maintained residential custody of the parties' three minor children approximately sixty-six percent of the time. Appellant was required to pay child support in the amount of $550 per month. This amount was calculated according to worksheet guidelines using the parties' respective incomes at the time of the dissolution and incorporating a 29.22 percent deviation credit on appellant's behalf based on the relative amount of time the children spent in her care.

On January 29, 1996, appellant filed a motion to modify child support based on a substantial change in circumstances. At the time the motion was filed, appellant had been working as a guidance counselor in Gahanna, Ohio, and appellee worked in the Marion area school system. Although appellant had contracted with Gahanna schools for the 1996–1997 school year to work for a salary of over $53,000, appellant decided to quit her job after obtaining employment in the Marion area as a guidance counselor earning approximately $38,000 per year. Appellant testified that the reason she sought work in Marion was to eliminate the time and expense of making the two-and-a-half-hour round-trip

drive to Gahanna each day. In addition, appellant also wanted to be able to attend her children's after-school activities in Marion.

On August 19, 1996, a hearing was held on appellant's motion to modify support. The parties agreed that appellee's income for 1995–1996 equaled $52,748.[1] At issue in the hearing was the amount to use as appellant's income when calculating her child support obligation. The trial court entertained testimony concerning appellant's 1995–1996 and 1996–1997 Gahanna salaries, as well as her 1996–1997 Marion salary.[2] Appellee argued that the trial court should impute the income appellant could have earned from her Gahanna job in the 1996–1997 school year when figuring her child support obligation. Another issue for determination at the hearing was whether the trial court was required to credit appellant 29.22 percent for the amount of time she cared for the parties' children, in accordance with the parties' previous arrangement.

On October 4, 1996, the trial court found appellant to be voluntarily underemployed as a result of her decision to quit employment in Gahanna to work in Marion. Concordantly, the court found that appellant had voluntarily reduced her income by approximately $15,000. This amount was then imputed to appellant's income on the child support worksheet filed by the trial court. In its judgment entry of April 21, 1997, the trial court found that, using the deviation method established by the parties in their divorce agreement, no modification of child support was warranted since appellant could not demonstrate a change of circumstances through a ten-percent deviation from the existing child support order.

Appellant now appeals this decision, asserting nine assignments of error, all of which challenge the correctness of the trial court's decision finding appellant voluntarily underemployed, imputing income to appellant, and otherwise computing the parties' salaries for purposes of the child support worksheet. Because the assignments of error are interrelated, we will address some of them together in our review of the trial court's judgment entry.

Assignment of Error Number Two

"The trial court erred and abused its discretion by failing to consider all of the criteria set for in R.C. 3113.215(A)(5)(a) and by imputing income to appellant based on her previous job in a community different than the one in which she was a resident."

---

1. This amount excludes income appellee was required to pay to the State Teacher's Retirement System.

2. It was agreed by the parties that the use of any of these figures should also exclude income appellant was required to pay to the State Teacher's Retirement System.

■ We recognize that trial courts are given broad discretion whether to modify a prior order of child support. *Woloch v. Foster* (1994), 98 Ohio App.3d 806, 810, 649 N.E.2d 918, 920. The modification of a prior child support order involves a two-step inquiry. First, the court must determine whether the movant has demonstrated a substantial change in circumstances. If a substantial change in circumstances is demonstrated, then the court should make a modification that is appropriate in light of the factors set out in R.C. 3109.05(A). *Id.*, citing *Cole v. Cole* (1990), 70 Ohio App.3d 188, 590 N.E.2d 862. A "substantial change of circumstances" is evidenced when the new child support calculation under R.C. 3113.215(E) or (F) deviates from the existing order by ten percent. R.C. 3113.215(B)(4). If the deviation was not contemplated by the trial court at the time the original order was made, the ten-percent deviation alone is sufficient to justify a modification of child support. *Baire v. Baire* (1995), 102 Ohio App.3d 50, 54–55, 656 N.E.2d 984, 987–988.

■ R.C. 3113.215 governs the calculation of child support and includes definitions to assist in determining a parent's income. The portion relevant to this case, R.C. 3113.215(A)(1)(b), defines income for a parent who is unemployed or underemployed as the sum of the gross income of the parent and any potential income of the parent. "Potential income" is defined as "[i]mputed income that the court * * * determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides." R.C. 3113.215(A)(5).

In the present case, the trial court found that appellant had voluntarily reduced her income and become "underemployed." As a result, when determining the potential income to be imputed to appellant, the trial court considered what appellant was currently making as a guidance counselor in Marion and added what she could have made had she continued to work in Gahanna for the 1996–1997 school year. Thus, over $15,000 was imputed to appellant's income. Appellant claims that this was error under R.C. 3113.215(A)(5) and we agree.

The Supreme Court of Ohio has held that the issue of "whether a parent is voluntarily (*i.e.*, intentionally) unemployed or voluntarily underemployed" and "the amount of 'potential income' to be imputed" are determinations within the trial court's discretion that will be upheld absent an abuse of discretion. *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218, 222. An abuse of discretion is described as an "unreasonable, arbitrary or unconscionable" attitude. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

While it is not disputed that appellant made a voluntary choice to leave her job in Gahanna for a similar job in Marion at reduced pay, we do not believe that the trial court should have imputed any potential income to appellant. When a person is underemployed, R.C. 3113.215(A)(5)(a) requires the court to consider a parent's potential earnings *based on their recent work history, occupational qualifications, and the prevailing job opportunities in the community in which the parent resides.* The record reveals that although the location is different, appellant is still performing the job of a school counselor. Appellant's education qualifies her to do this work, and there is no indication that appellant could obtain other more lucrative employment given her current education and skills. Furthermore, the only evidence presented to the trial court regarding the prevailing job opportunities in appellant's community of Marion, Ohio demonstrates that appellant was earning the most she could for a school counselor with her experience. When determining an amount of potential income to impute to appellant's income on the child support worksheet, the trial court seemed to rely exclusively on appellant's previous Gahanna salary. However, we find that the fact that appellant could earn more in Gahanna, or some other city in Ohio, is irrelevant to the court's analysis since the statute limits the court to the consideration of job opportunities in the community in which appellant lives. Given the lack of evidence that appellant had a recent work history or occupational skills that would warrant better employment in the Marion area, we find no reason supporting the trial court's decision to impute any potential income to appellant. Appellant's second assignment of error is sustained.

Assignment of Error Numbers Three and Six

"The trial court erred and abused its discretion by assigning to Appellant income based on a future contract for the school year 1996–1997 while assigning to Appellee income based on a contract for the school year 1995–1996 resulting in a distorted comparison of the parties' respective gross incomes for use in the Section E worksheet.

"The trial court's determination to use Appellant's future income for the school year 1996–1997 and Appellee's present income for the school year 1995–1996 was against the manifest weight of the evidence."

The record shows that when computing a new child support worksheet, the trial court used income levels for the 1995–1996 school year for appellee and an imputed income level for the 1996–1997 school year for appellant.[3] Consequently,

---

3. Again, the parties agreed that appellee's income for 1995–1996 was $52,748, and a stipulation was entered to that fact. As for appellant, the worksheet filed by the trial court shows appellant's gross income to be $53,396 ($38,365 from current employment in addition to $15,031 the court imputed to her as the additional amount she would have earned had she

not only is the amount representing appellant's income incorrect in that it imputes income to appellant, but it is also incorrect in that it uses income from a year different from the year used for appellee. The trial court should have used either the 1995–1996 fiscal year income or the 1996–1997 fiscal year for both parties when computing their child support obligations under the guidelines. On remand, the trial court is instructed to use the same year of income for both parties when calculating child support obligations of the parties. Appellant's assignment of errors three and six are sustained.

Assignment of Error Numbers Four and Five

"The trial court erred and abused its discretion by ignoring the parties' stipulation regarding the treatment of their State Teacher's Retirement System (STRS) contributions and including it in Appellant's income but not including it in Appellee's income resulting in a distorted comparison of the parties' respective gross incomes for use in the Section E worksheet.

"The trial court's finding that Appellant's gross income included her STRS contribution was contrary to the parties' stipulation, and therefore, was against the manifest weight of the evidence."

The record reveals that the parties were in agreement that the trial court should not consider their State Teacher's Retirement System payments as a part of their gross income. Apparently, these contributions to the retirement fund were mandatory for both parties. As a result, both parties had agreed that the gross income figure used to calculate their child support obligations should be the amount of their income after deducting retirement contributions. When examining the record in this case and the child support worksheet compiled by the trial court, it is clear that the court used appellee's income after retirement contributions as his gross income. However, the record is not clear on the amount of appellant's income after retirement deductions for the year 1996–1997, nor is there evidence the trial court deducted retirement contributions from appellant's income before computing her child support obligation. As a result, appellant's fourth and fifth assignments of error are sustained.

Since the trial court will be computing a new worksheet on remand, we instruct the trial court to determine with clarity the incomes of the parties after retirement deductions and use these amounts as the gross income figures of the parties when computing child support under the guidelines.

We find that appellant's first and seventh assignments of error, alleging that the trial court erred in denying appellant's motion for modification, are moot,

---

not quit her employment in Gahanna). However, from the testimony at the hearing, this amount represents appellant's 1996–1997 earnings.

given our determination that errors occurred at the trial level requiring the trial court to reexamine this case and issue a new worksheet based on the instructions in this decision. Likewise, appellant's eighth and ninth assignments of error, alleging that the trial court's decision was based on facts not in the record and that the trial court erred in failing to hold an additional evidentiary hearing, are also rendered moot due to the foregoing decision of this court.

In review, the trial court is instructed to decide which year's income, 1995–1996 or 1996–1997, is appropriate to use for both parties when determining income for the purposes of the child support worksheet. Whichever year is chosen, the income of both parties should reflect the amount they earned minus their mandatory retirement payments. Finally, if the trial court determines the fiscal year 1996–1997 to be the most appropriate year of income to use in determining the motion for modification of child support, the trial court is instructed not to impute income from appellant's Gahanna employment.

*Judgment reversed*
*and cause remanded.*

HADLEY and THOMAS F. BRYANT, JJ., concur.