OPINION
{¶ 1} Anthony Worthen ("Mr. Worthen") appeals from a judgment of the Domestic Relations Division, Clark County Court of Common Pleas, which ordered him to pay half of the parochial school tuition for his minor child beginning with the 1999-2000 school year.
 {¶ 2} Mr. Worthen and Catherine Worthen ("Mrs. Worthen") separated in August of 1999. Mrs. Worthen filed for divorce on March 13, 2000. At that time, the couple had two minor children; however, one of the children became emancipated shortly after the complaint for divorce was filed. The couple's remaining child, Katie Worthen ("Katie"), was born on June 5, 1993. During the 1998-1999 school year, Katie had attended the Maiden Lane Church of God Kindergarten Program by agreement of the parties. At the time that Mrs. Worthen filed for divorce, Katie was attending Springfield Christian School in accordance with her mother's wishes and was in the first grade.
 {¶ 3} On April 10, 2000, a hearing was held regarding temporary orders. As part of its temporary orders, the magistrate ordered Mr. Worthen to reimburse Mrs. Worthen for half of the parochial school tuition payments that she made on or after March 13, 2000 within fifteen days of receiving a copy of the receipt or cancelled check from Mrs. Worthen.
 {¶ 4} On August 11, 2000, Mrs. Worthen filed a motion requesting that the trial court find Mr. Worthen in contempt for failing to pay half of Katie's parochial school tuition as ordered by the magistrate. The trial court concluded that Mr. Worthen was not in contempt because Mrs. Worthen had not mailed him copies of her receipts or cancelled checks. Because the tuition was being deducted from Mrs. Worthen's paycheck automatically, she did not have these items. Thus, the court found that it would be sufficient for Mrs. Worthen to mail Mr. Worthen copies of her checks. Because Mr. Worthen had not received any evidence of Mrs. Worthen's payment of tuition, the court did not find him in contempt.
 {¶ 5} A final divorce hearing was held on January 9, 2001. On January 24, 2001, the magistrate entered a decree of divorce and ordered Mr. Worthen to immediately reimburse Mrs. Worthen for one half of the tuition she had paid for the 1999-2000 school year and to pay one half of the tuition for subsequent school years directly to the school. Mr. Worthen filed objections to the magistrate's decision, which the trial court overruled on May 25, 2001. The trial court adopted the magistrate's decision as the final order of the court. Mr. Worthen appealed, and we reversed on March 1, 2002, finding that the trial court had failed to conduct a de novo review of the magistrate's decision. On remand, the trial court applied a de novo review and restated its prior orders.
 {¶ 6} Mr. Worthen appeals, raising four assignments of error.
 {¶ 7} "I. THE COURT LACKED THE POWER TO AWARD REIMBURSEMENT TO APPELLEE FOR TUITION EXPENSES SHE PAID FOR THE CHILD BEFORE FILING FOR DIVORCE."
 {¶ 8} Under this assignment of error, Mr. Worthen argues that the trial court erred in ordering him to pay half of the parochial school tuition for the 1999-2000 school year because Mrs. Worthen did not file for divorce until March 13, 2000. He argues that the court lacked jurisdiction to award child support for the time period prior to Mrs. Worthen's filing for divorce.
 {¶ 9} We agree with the general principle that a court lacks jurisdiction to award child support for a time period prior to the filing for divorce. See Jackson v. Jackson (May 26, 2000), Montgomery App. No. 18007, citing Meyer v. Meyer (1985), 17 Ohio St.3d 222, 478 N.E.2d 806. However, as Mrs. Worthen argues, the trial court's order regarding tuition appeared under the heading "Indebtedness." The trial court was permitted to allocate responsibility for the parties' marital debts. Therefore, the trial court did not abuse its discretion in ordering Mr. Worthen to pay half of Katie's tuition for the period prior to Mrs. Worthen's filing for divorce.
 {¶ 10} The first assignment of error is overruled.
 {¶ 11} "II. THE COURT ERRED IN ORDERING APPELLANT TO PAY OR REIMBURSE APPELLEE FOR THE PAROCHIAL SCHOOL TUITION, AS SUCH ORDER IS IN VIOLATION OF THE U.S. AND OHIO CONSTITUTION."
 {¶ 12} Under this assignment of error, Mr. Worthen argues that the trial court's order requiring him to pay half of his daughter's parochial school tuition violates the First and Fourteenth Amendments of the United States Constitution and Article I, Section 7 of the Ohio Constitution. Both the federal and state constitutions prohibit government from compelling a person to support a particular religion or any religion.
 {¶ 13} Both parties cite to a number of cases involving a trial court's enforcement of a separation agreement providing that the non-custodial parent would pay for the religious schooling of his or her children. See, e.g., Rand v. Rand (1985), 18 Ohio St.3d 356, 358-59,481 N.E.2d 609; In re Landis (1982), 5 Ohio App.3d 22, 28, 448 N.E.2d 845. However, Mr. Worthen is correct in arguing that these cases are distinguishable from the case sub judice in that they all involve a separation agreement in which the non-custodial parent agreed to pay the tuition then changed his or her mind. The case before us involves a trial court's order, as part of a divorce decree, that the non-custodial parent pay a portion of his child's parochial school tuition. Although neither Mr. Worthen nor Mrs. Worthen cite to the opinions, such orders have consistently been upheld as constitutional by Ohio courts. See discussion infra.
 {¶ 14} In his concurrence in Rand, then Chief Justice Celebrezze noted that the trial court's order requiring the non-custodial parent to pay for the religious schooling of his child would not violate the Establishment Clause even absent the parties' agreement. Rand,18 Ohio St.3d at 360 (Celebrezze, C.J., concurring). Chief Justice Celebrezze reasoned that, because it was the decision of the custodial parent whether to send her child to religious school, requiring the non-custodial parent to pay for that schooling did "not amount to a forced religious donation in violation of the Establishment Clause" but rather was "an acceptable form of financial child support designed to partially reimburse the custodial parent for expenses incurred in rearing the child." Id. at 360-61 (Celebrezze, C.J., concurring).
 {¶ 15} In Chrnko v. Chrnko (May 7, 1987), Cuyahoga App. No. 52103, the Eighth District Court of Appeals reviewed a situation similar to this case. In Chrnko, the trial court ordered the husband, the non-custodial parent, to pay for the parochial school tuition of one of the parties' children. The husband appealed, arguing that the court's order violated the Establishment Clause. Applying the traditional Establishment Clause test set forth in Lemon v. Kurtzman (1971),403 U.S. 602, 612-13, 91 S.Ct. 2105, 2111, the court concluded that the court's order (a) had a secular purpose, (b) as its primary effect neither advanced nor inhibited religion, and (c) did not foster excessive governmental entanglement with religion. Chrnko, supra. The court noted that sending the children to religious school was the decision of the wife and that, if she were to decide not to do so, the husband would no longer be required to make any payment to the religious organization. Furthermore, the child had attended religious school prior to the divorce, and the court's order only allowed the mother to continue with that practice. Therefore, the court's order did not bear the "imprimatur of state approval" because the child's mother, not the court, made the decision to send the child to religious school. Id., citing Mueller v.Allen (1983), 463 U.S. 388, 399, 103 S.Ct. 3062, 3069. See, also, Musarrav. Musarra (Oct. 28, 1988), Geauga App. No. 1432.
 {¶ 16} The Fourth District Court of Appeals has also upheld a trial court's order that a non-custodial parent pay for the religious school tuition of his child. See Smith v. Null (Jan. 29, 2001), Lawrence App. No. 00CA21. Relying on Chief Justice Celebrezze's concurrence inRand, Chrnko, and Hoefer v. Jones (N.J. 1994), 672 A.2d 1299, the court concluded that the trial court's order did not violate the United States or Ohio Constitution. Hoefer, like Rand, involved the trial court's enforcement of a separation agreement requiring the non-custodial parent to pay for the parochial school tuition of his children. The Hoefer court reasoned that the payments were for the purpose of fulfilling the father's parental obligations rather than supporting the religious institution in question. Id. at 1308-09. The court further reasoned that the payments were made on behalf of the children, not the father, and were consistent with the religious beliefs of the children as determined by the mother. Id.
 {¶ 17} We find the reasoning in these cases to be persuasive. As the custodial parent, Mrs. Worthen has the right to determine whether Katie will attend a religious school or a public school. By sending her child to a religious school, Mrs. Worthen is continuing the religious schooling to which Mr. Worthen agreed when he agreed to send Katie to parochial school for kindergarten. His reasons for now objecting to religious education appear to be financial, rather than religious. In any case, the trial court's order passes the Lemon test. It has a secular purpose of requiring Mr. Worthen to pay a portion of the tuition at the school chosen by Katie's custodial parent. The primary effect of the court's order is to assist Mrs. Worthen in financing her daughter's education, not to advance religion. Finally, the court's order does not foster excessive governmental entanglement with religion. The trial court could, and we assume in this case would, have made the same order had Katie been attending a secular private school. Its order is not unconstitutional simply because Katie is attending a religious school. Accordingly, we conclude that the trial court's order did not violate either the United States or the Ohio Constitution.
 {¶ 18} The second assignment of error is overruled.
 {¶ 19} "III. THE COURT ERRED IN ORDERING APPELLANT TO PAY ONE HALF OF THE TUITION FOR THE 1999-2000 AND 2000-2001 SCHOOL YEARS BECAUSE APPELLEE FAILED TO COMPLY WITH THE PROCEDURAL REQUIREMENTS SET FORTH IN THE TEMPORARY ORDERS FOR SUCH REIMBURSEMENT."
 {¶ 20} As Mrs. Worthen notes in her brief, Mr. Worthen is appealing from the trial court's final decree of divorce, which required him to pay half of Katie's parochial school tuition. The fact that Mrs. Worthen did not comply with the procedure for payment set forth in the magistrate's temporary orders is not relevant to the court's final order. Mrs. Worthen did, in fact, pay parochial school tuition during that time, and the trial court did not abuse its discretion in ordering Mr. Worthen to reimburse her for half of that expense.
 {¶ 21} The third assignment of error is overruled.
 {¶ 22} "IV. THE COURT ABUSED ITS DISCRETION IN ORDERING APPELLANT TO PAY TUITION EXPENSES HE CLEARLY COULD NOT AFFORD WHEN OTHER EDUCATIONAL RESOURCES WERE AVAILABLE TO THE MINOR CHILD."
 {¶ 23} We review the trial court's order for abuse of discretion, which means that the trial court's attitude was "unreasonable, arbitrary or unconscionable." Booth v. Booth (1989), 44 Ohio St.3d 142, 144,541 N.E.2d 1028.
 {¶ 24} The trial court heard evidence regarding the financial situation of both parties. Mr. Worthen testified that he had incurred credit card debt furnishing his new residence and that he had run out of money and sought help from Consumer Credit Counseling. He indicated that, at the time of the final hearing, he had a monthly deficit of $1,563.15. However, Mrs. Worthen testified that she worked three jobs to provide for herself and her two children. The trial court weighed this evidence and ordered Mr. Worthen to pay half of Katie's religious school tuition. We cannot conclude that the trial court abused its discretion in doing so.
 {¶ 25} The fourth assignment of error is overruled.
 {¶ 26} The judgment of the trial court will be affirmed.
GRADY, J. and YOUNG, J., concur.