OPINION
{¶ 1} Appellant, Selma Brittingham ("Selma"), appeals the decision of the Brown County Court of Common Pleas, Domestic Relations Division, ordering appellee, James Brittingham ("James"), to pay child support. Selma argues that James is obligated by law to pay child support calculated from the date of their divorce decree, rather than from the later date of her motion for child support, as the trial court ordered. We agree with Selma and reverse the trial court's decision.
 {¶ 2} Selma and James married in August 1970. The couple had two children, Joanie (D.O.B. 11/6/80), and James (D.O.B. 6/24/82). Selma filed a divorce complaint with the trial court in March 1992. In her complaint, Selma specifically requested custody of the children and child support. The trial court held a hearing and issued a divorce decree in June 1993. The trial court granted custody of the children to Selma, but did not order James to pay child support at that time. James had recently been convicted of felonious assault as a result of an incident in which he shot Selma with a firearm. In the decree, the trial court stated: "The Court retains and reserves jurisdiction over all matters concerning visitation and/or child support as the parties acknowledge the Defendant is to be incarcerated for a period of time immediately subsequent to the proceeding."
 {¶ 3} James apparently began his prison term shortly after the trial court issued the divorce decree. Selma testified at the September 2001 hearing on her child support motion that James was released for nine months in 1997 while he awaited a new trial. While James was released, Selma testified that she received a child support check from James through his attorney for approximately $300. She testified that this check was the only child support she received from James following the divorce decree. James was subsequently re-incarcerated and later released some time in 2000.
 {¶ 4} In April 2001, Selma filed a motion to establish child support "effective April 14, 1992," the date she filed her divorce complaint. In support of her motion, Selma cited the language from the divorce decree indicating that the trial court would "reserve jurisdiction over all matters concerning visitation and/or child support."
 {¶ 5} The trial court held a hearing on Selma's motion in September 2001. Selma and James testified at the hearing. In March 2002, the trial court awarded Selma child support for a two-month period from the date of her motion in April 2001 until June 2001, when the parties' youngest child graduated from high school. However, the trial court did not award Selma child support for any period of time prior to the filing of her April 2001 motion. In support of its decision, the trial court cited Gerlach v. Gerlach (1997), 124 Ohio App.3d 246, which held that a court may not retroactively modify a child support order beyond the filing date of a motion to modify the order.
 {¶ 6} Selma now appeals the trial court's decision, raising one assignment of error as follows:
 {¶ 7} "The trial court erred to the prejudice of plaintiff/appellant in overruling objections to the magistrate's decision and in refusing to award child support for plaintiff/appellant for the children of the marriage."
 {¶ 8} In her sole assignment of error, Selma argues that the trial court should have ordered James to pay child support from the date of the divorce decree in 1993, not the date of her 2001 motion. Her argument relies on the fact that the trial court reserved jurisdiction to deal with "all matters concerning * * * child support" in the divorce decree. Therefore, Selma contends, the trial court could later establish child support for the years when James was imprisoned and she was supporting their two children. She argues that this was the very intent of the trial court — to deal with all child support issues, including amounts James was obligated to pay for prior years, after James was released from prison.
 {¶ 9} Selma also argues that the Gerlach case, relied upon by James and the trial court, is inapplicable to this case. She argues thatGerlach is distinguishable because it involved the modification of an existing child support order, not the establishment of a child support order when the trial court explicitly reserved jurisdiction over all matters concerning child support.
 {¶ 10} James argues that the trial court essentially ordered $0 in child support in the 1993 divorce decree, and that Selma's 2001 motion was asking the court to modify that prior order of the trial court. According to James, the trial court correctly found that Gerlach
prohibited such a modification.
 {¶ 11} We apply an abuse of discretion standard of review when reviewing a trial court's decision regarding child support. Dunbar v.Dunbar, 68 Ohio St.3d 369, 371, 1994-Ohio-509; Booth v. Booth (1989),44 Ohio St.3d 142, 144. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 12} Subject to two exceptions, a trial court may not retroactively modify an existing child support order. R.C. 3119.83;McPherson v. McPherson (1950), 153 Ohio St. 82, 91; Gerlach,124 Ohio App.3d at 251. First, if the court determines that a child support order should be modified, it can make the modification order retroactive to the date the motion for modification was filed. R.C. 3119.84; Hamilton v.Hamilton (1995), 107 Ohio App.3d 132, 139-140; Tobens v. Brill (1993),89 Ohio App.3d 298, 304. Second, the court may retroactively modify an existing child support order, even beyond the date the motion to modify was filed, upon discovering fraud perpetrated by the obligor. Osborne v.Osborne (1992), 81 Ohio App.3d 666, 674.
 {¶ 13} Contrary to James' contention, we do not find that this case is analogous to cases in which a party seeks to retroactively modify an existing child support order. In this case, the trial court did not issue a child support order at the time of the divorce. Therefore, no child support order existed that could be modified. We find that this case is analogous to cases in which a party seeks to establish an initial child support order well after being granted custody of the child, essentially seeking reimbursement for having supported a child without the aid of the other parent.
 {¶ 14} In Meyer v. Meyer (1985), 17 Ohio St.3d 222, the Ohio Supreme Court dealt with the issue of whether a parent could seek reimbursement from the other parent for child support where no child support was originally ordered. In Meyer, a mother filed a motion in the trial court seeking reimbursement from her ex-husband for supporting two of their children. Two years prior to her motion, the mother had been granted custody of the two children by court order. The trial court did not issue a child support order at that time nor did the mother request one. The court held that a "custodial parent is not entitled to reimbursement for child support from the non-custodial parent where no support order is made or requested at the time custody is awarded." Id. at 225. The court stated that its decision did not prevent an action to receive or modify future child support payments, but that "the importance of finality outweighs any inequities caused by the failure of the custodial spouse to act at the time custody is granted." Id.
 {¶ 15} We find two important distinctions between Meyer and this case. First, unlike the mother in the Meyer case, Selma requested child support at the time she was granted custody of the children. She specifically requested child support in her divorce complaint. Second, unlike the trial court in Meyer, the trial court in this case explicitly reserved jurisdiction to address "all matters concerning child support," which would include child support James owed during his time in prison.
 {¶ 16} A recent Eighth District Court of Appeals case also dealt with similar facts to this case. In Weedon v. Weedon, Cuyahoga App. No. 81260, 2003-Ohio-432, the parties were divorced in 1987 and the trial court made no child support order at that time. However, the trial court ordered that the father report his employment status and earnings to the CSEA. In 1999, the CSEA intervened, requesting that the trial court find the father in contempt for failing to report his employment status and earnings. The trial court soon approved an agreed entry establishing child support prospectively from the time of the CSEA's 1999 motion. The trial court subsequently ruled that it lacked jurisdiction to award child support from the date of the divorce complaint in 1986 to the date of the CSEA's 1999 motion, as the mother had requested.
 {¶ 17} The court of appeals affirmed the trial court's decision finding that it lacked jurisdiction to order child support prior to the 1999 motion. Citing Meyer, the court noted that though the mother requested child support in her 1986 divorce complaint, "no support order was issued at that time and the trial court did not expressly reserve jurisdiction over the matter." Weedon at ¶ 12.
 {¶ 18} Like Meyer, Weedon is distinguishable. As the Weedon court noted, the trial court "did not expressly reserve jurisdiction" over all child support matters. As discussed earlier, the trial court in this case expressly reserved jurisdiction over all child support matters.
 {¶ 19} We find that the trial court abused its discretion in failing to establish child support from the time of the divorce decree in June 1993 to the time Selma filed her motion in April 2001. Selma requested child support in the divorce complaint and the trial court explicitly reserved jurisdiction to address "all matters concerning child support." It appears from the record that the sole reason the trial court did not order child support at the time of the divorce hearing was the fact that James was soon to begin his prison term. Given the facts of this case, we find that it would be manifestly unjust to allow James to profit from his voluntary act of committing felonious assault against his wife.
 {¶ 20} Accordingly, we sustain Selma's assignment of error and reverse the trial court's decision. We remand the case to the trial court so that it can calculate James' child support obligation from the date of the divorce decree.
 {¶ 21} Judgment reversed and remanded to the trial court for further proceedings according to law and consistent with this opinion.
YOUNG and VALEN, JJ., concur.